No. 882

First Circuit

———

BUHLER v. EUBANKS ET AL.

———

(December 8, 1931. Opinion and Decree.)

———

Laycock & Moyse, of Baton Rouge, attorneys for plaintiff, appellant.

James D. Womack, of Baton Rouge, attorney for defendants, appellees.

LeBLANC, J. Plaintiff, Mrs. Nettie Buhler, after having qualified and been con-

firmed as the natural tutrix of her minor child, John V. Manning, Jr., instituted this suit for his use and benefit, for damages for personal injuries sustained by him when he was struck by a Ford automobile on the public highway known as the Bayou Sara road in the Third ward of East Baton Rouge parish, on January 30, 1930. The claim is made against the defendants, J. H. Eubanks and Joe Loudon, on the representation in the petition that Eubanks was the owner and Loudon the driver of a certain Ford bus, which, in attempting to pass a Ford automobile owned and being driven by one Porter Stephenson at the moment of the accident, struck the front fender of the latter car, causing the driver to lose control thereof and run into the child and injure him. She prays for judgment against both defendants in the sum of $5,000 and for reservation of her rights to sue Porter Stephenson, should it be found that the damages and injuries were due to his fault and negligence.

From an adverse decision in the lower court under which her demand was rejected, the plaintiff has appealed.

The joint answer of the two defendants is a denial that the bus struck the Ford car when it was in the act of passing ahead of it and contains a specific averment that the accident was due solely to the negligence and carelessness of Porter Stephenson, the driver of the Ford automobile.

The bus which Loudon was driving is used by several parties as their means of transportation from their homes to the Standard Oil plant in Baton Rouge, where they work. It is not quite certain from the testimony who really owns it, as the several men who so use it all contribute by the month to its operating expense and its upkeep. The issue of ownership is not raised by the pleadings and we would not refer to it were it not that quite a good bit of evidence was taken concerning it from all of which we conclude it is sufficiently shown that Eubanks has that much interest in, and control over it as to make him responsible and answerable in damages in an action like the present one, provided, of course, it is shown that it was being negligently operated on the public highway.

On the afternoon of this accident, the bus and the Ford car were both traveling north. Besides the two defendants, there were six passengers on the bus. It is shown to have a seating capacity of fifteen persons, there being a front seat and a bench seat on each side lengthwise the whole body. In the Ford car, which was a touring model of the older type, there were four passengers besides the driver, Stephenson, all of them being negroes.

Shortly before the accident, the bus was driving ahead of the Ford car. When it reached a place referred to in the testimony of some of the witnesses as Thompson's boarding house, it stopped to discharge a passenger, and while it was stationary, the Ford car passed ahead of it, driving at a speed of approximately 25 miles an hour. The bus then proceeded on its journey, gradually gaining on the Ford, and at a point some four or five hundred yards from where it had started again, passed ahead of it. Naturally it had to be traveling faster than the Ford car, but there is nothing in the record to show that it was being driven in a reckless or careless manner and at an excessive rate of speed. The determining issue of fact, which is whether or not the bus struck

the Ford and caused its driver to lose control of his car and run into the injured child, arises at this point and it is here that we have a sharp conflict of the testimony.

The occupants of the Ford car all testify that the rear end of the bus struck the front left fender of the Ford, causing the car to swerve to the right side of the road, off of the paved portion and on to the shoulder on which the injured child was walking. All of the passengers in the bus, on the other hand, state positively that they have no knowledge whatever of any collision between the two vehicles. Not one of them experienced any jar or other sensation which necessarily had to result from a contact of the force of the one that is supposed to have taken place between them. Some of them only heard of the accident the day after.

The principal contention of counsel for plaintiff is to the effect that positive testimony such as that adduced by the witnesses who were in the Ford car should prevail over the purely negative evidence on the other side. But the testimony on that side is not all negative. Defendant Loudon, who was driving the bus, says that when he passed the Ford car there was a clearance of three or four feet between them, and the witness Charles Causey, who was sitting on the front seat on the right-hand side, and who was in a better position to see, swears that when Loudon drove by the Ford he was something like three and a half or four feet away from it. This it seems to us, is positive or affirmative proof, which if given any consideration establishes the fact that it was a physical impossibility for the two cars to have come in contact with each other. The other testimony of the several witnesses that they felt no jolt and heard no noise, then becomes corroborative of what positive proof there is that there was no contact and adds weight to it.

Counsel for plaintiff also lays great stress on the testimony of the witnesses J. J. Brown and Hebert Brown, who were following the bus in their own car and who testify that about 200 feet from where the accident occurred, the hat of Hebert Brown's child had been blown out of the car and they had stopped to pick it up. Neither says that he saw the accident. J. J. Brown heard a lick which he merely surmises was the blow caused by the two cars coming in contact. Hebert Brown's testimony has reference only to marks which he saw on the road, from which an attempt is made to show that the bus ran into the Ford car. But none of this evidence is of a more positive nature than the testimony of the defendant which counsel for plaintiff contends is not entitled to much consideration. It is also urged that one of these witnesses examined the Ford car and found marks on it which indicated that there had been a contact of the two automobiles, but there is no proof to show that the marks were not there prior to the accident. In this connection, we note that on the morning following the accident, a deputy sheriff of the parish examined the bus and he testifies that he found no signs at all on it to show that it had come in contact with another object.

A careful consideration of all the evidence in the case satisfies us of the correctness of the decision of the lower court. At least, we find no such error as to justify a reversal.